Good morning, Mr. Presiding Justice. My name is Roderick Mollison. I appear on behalf of the appellant. Good morning, Robert. Go right ahead. Thank you, sir. If the court will permit, I'd like to indulge in two presumptions. The first presumption, of course, I think is fair, and that is that the court has read all of the briefs. We just, you know, you read my mind. We're just going to, I just commented to my colleagues that I'm not going to say that. I'm just not going to say that because that's a given. I think so. We have read the briefs. We are familiar with the briefs. We've seen the record. We are familiar with the record, et cetera, et cetera, just as you have, counsel. Thank you, sir. All right. Go ahead. And the second assumption is that since neither a lawyer had asked for appellate argument, and this argument is made on the court's own motion, it occurs to both counsel that, in fact, the reason for the argument is that the court has questions about the case. We're going to find out, aren't we? I'm sorry? Go right ahead. Go right ahead. I'm sorry. No, not at all. Basically, the case concerns essentially two principal issues. And the two principal issues are which statute of limitations applies to this transaction. And the second issue is essentially a factual issue. When does the statute begin to run? And taking them in order first, there are three well-known statutes of limitations. The 10-year contractual in Illinois, which essentially the case law provides that invoke the 10-year limitations. The writing, which is sued upon, or the series of writings which are sued upon, must, in fact, within their four corners, set forth completely all of the terms and obligations of the parties. And if you look at the writing that was sued upon in this case, it just simply says, Memo to Leonard Kranzler, March 10th, loan to Lewis Saltzman. It clearly does not say that Leonard Kranzler loaned Lewis Saltzman $10,000. You might draw that inference, but you might also draw the inference that Lewis was simply giving a memo, for whatever reason, to a third person. And the only way that can be determined is with oral evidence. It does not say when it's to be repaid. It does not say what the interest is. It just simply says paid back with interest. And those matters cannot be determined without oral evidence. And once oral evidence comes into the case, I take it the case law of Illinois is pretty clear. The 10-year statute is out the window. And now we're looking either at the five-year statute for oral agreements, or we're looking at the three-year statute set forth in the UCC. Excuse me, Mr. Mollison. I apologize for interrupting, but let's get back to the Statute 5-13-206. The statute provides it may be a writing or other evidence of indebtedness in writing. So how would this note fail in that regard? Well, as I pointed out, it really doesn't say that Leonard Kranzler, the plaintiff in this case, loaned money to Lewis. It just doesn't say that. It can be read in one of two ways. But for any other reason, why would the gentleman have signed the document? Well, perhaps for whatever reason, he simply wanted to alert Leonard Kranzler to the fact that money had been loaned to him. I mean, money didn't have to come from Leonard Kranzler. It could have come from any person out there, an entity controlled by Leonard Kranzler, a third person unrelated. But it's an acknowledgment, clearly, that Lewis Saltzman has received a loan for $10,000 from who is not stated. Unless you are willing to read the memo 2 as also meaning that this, in fact, is the person who loaned the money. It does not say when the money is to be repaid, if ever. I mean, kind of an obvious oversight because most commercial paper has a due date. Well, now you're getting into the area of whether or not it would be a negotiable document. I'm sorry? Aren't you now getting into the area of whether or not the document is negotiable, which I think is a pretty hard case to prove? But it appears to me that under 206 that we do have a writing which on its face evidences an indebtedness. I agree. It does. The question is to whom? Memo to Leonard Kranzler. Okay. Does that mean if he writes a memo to his secretary that he's indebted to the secretary? That's not the case here, sir. Well, we can't really get to that point, sir, without some evidence. Proceed. Yes, sir. The second question is, Your Honor brought up, really raises the question as to negotiability. And I think both sides are very clear and agree that this is not a negotiable note within the meaning provided by the Uniform Commercial Code. But the Uniform Commercial Code also provides a special section for obligations arising under this article, Article 3, not otherwise enforceable. Now, I take it that Article 3, governing commercial paper, and if I don't think it can come to any other conclusion that this is a loan, and as Your Honor suggested, perhaps it's a document that sets forth a loan to a particular person, but it's not negotiable. Well, if it's not negotiable, it seems to me that the fair reading of Article 3, Section 3118, is that it falls directly as arising under this article, but not governed by this section. And this section provides for negotiable paper. What's the impact? The impact is there's a three-year limitations period. Otherwise, we come to the five-year statute, which is governed to all contracts. Of course, with all contracts, now oral evidence comes in, and, you know, we sort out who owes who what, and who paid who what, and what, if anything, was agreed upon. Mr. Mollison, isn't there agreement in the briefs that it's not a negotiable instrument? I'm sorry? Isn't there agreement in the briefs that it's not a negotiable instrument? Yes, yes. We're all agreed that it does not meet the requirements of Article 3 as negotiable paper. So let's try to talk about that. Okay. Okay? Yes. Go right ahead. But given the possibility of one of those three, it's the appellant's contention that the trial court erred in refusing to dismiss the complaint, the amended complaint, because it raised specifically that issue, the 10-year statute limitations, that this was a case that, no, you'd have to have oral argument. You'd have to have oral testimony. And you can't talk about 10-year limitations. And once that happens, now the question becomes a factual question. When exactly does the statute commence to run? And Illinois law is, of course, not entirely clear, but it essentially says the cause of action arises when the right to sue arises. And the right to sue arises when there is a demand and there is not a payment. Now, two funny things happened within the facts of this case. The defendant's brother-in-law pops up and writes a personal check to the plaintiff, which brings him back within the limitations period and says, oh, well, you know, this is a payment under the note. The limitations period is extended. But at that point, the plaintiff is clearly on notice that whatever is going on here, it's not the defendant that's repaying the money. In fact, the facts in the record were, and the affidavits show, that the plaintiff was never paid a nickel by this defendant, Lewis Saltzman. The evidence that was brought in from a bankruptcy deposition was that Lewis Saltzman was the president of a company. He was a stockholder. He was an officer. He was a director. And he testified, well, money was given to me. I gave it to the corporation. But we understood that, in fact, it really was the corporation that was getting the money. Well, okay, that's certainly a possibility. If he didn't put it in his pocket and it ended up in the corporation's pocket and the corporation acknowledges that by making the payments, Leonard Krantzler is clearly on notice that whoever is making the payments here, it's not Lewis. And that goes on for a period of more than 10 years. Mr. Molison, again, let me direct you again to 5-13-206, which on its face expressly states that if any payment, there's no statement as to from whom, but if any payment is received, that payment in and of itself will start a new 10-year period. Well, as we pointed out in one of the issues we raised in the trial court, was that the statute of limitations was being manipulated. Now, justice does not require the judge close his eyes and pretend that, oh, he doesn't know and he doesn't want to hear. But the person who made that payment, as was alleged in the pleadings, was a person who was accused of embezzling from the corporation. And, in fact, it was the contention that was raised that this action was really brought to gain leverage against the defendant on another lawsuit that was proceeding along in the law division. Now, I don't think a judge has to close his eyes and say, well, we don't want to hear about that. There was a payment made, and that's all we need to know. I think justice requires a certain degree of inquiry. What's really going on here? And if it's the brother-in-law that made that payment, why did he do that? I mean, you know, nobody goes around paying other people's debts out of the goodness of their hearts. That just doesn't happen in the real world. And I think the court is bound to inquire what's going on. Can I change the subject for a moment, Mr. Mollison? The issue that you make relative to the plaintiff asserting that this is a promissory note in its pleadings, and you claim that that's estoppel. There was stop then from arguing a promissory note. I mean, are you still sticking with that issue? Well, the doctrine, as Your Honor well knows, the doctrine of promissory estoppel essentially consists in a representation or a position taken in another proceeding, which is the same party, same issue, which then is brought to this proceeding, and now the individual who raises it says essentially you can't deny it, you've raised it, it's been ruled on. Was that argued in the trial court? I'm sorry? Was that argued in the trial court, the promissory estoppel issue? Well, I couldn't raise it as an estoppel issue, and I was kind of struggling with it because plaintiff was saying this is a promissory note. I think the answer to the question is no, isn't it? Yes, the answer to the question is no. Thank you, sir. And I realized, perhaps I'll bite late, that even though it wasn't a collateral estoppel issue, a promissory note estoppel, but it definitely brought it in under Article III for other matters not governed by this section, the three-year limitations. But you see, if, you know, and I don't profess to have a crystal ball. I don't, I mean, the facts were that I think everybody would agree upon was that Lewis never made payment one. He was a member of the corporation that did. He directed that that corporation make those payments. One could say quite readily, Lewis, or plaintiff, Kranzler was justified in the reliance that he knew the relationship, and he could take those payments as, in fact, made by Lewis. Well, okay, but does that put him within the five-year limitations? We contend, as a matter of fact, no, it doesn't, because what brings it within the five-year limitations is that payment by the brother-in-law. And we contend that was done specifically to extend the period of limitations. And if you look at those facts and you say, no, wait a minute, this is an attempt to manipulate a case. This is an attempt to run a favor for whatever reason, and the world doesn't work like that, then, no, that doesn't extend the limitations period. And I essentially submit that this was not a case for summary judgment. There were these factual issues that were all there before the court. And the court simply overruled them. We contend it was error to do that. How did the court determine the rate of interest? Sir? How did the trial court determine the rate of interest that was? They called for all testimony. And they essentially what they did was they had the plaintiff submitted an accountant who said, I'm an accountant, and I've looked at the general, I think it was the consumer price index, and I've determined that this was the probable interest that the bank was charging the plaintiff, and I've decided that this is an appropriate interest. But one thing is real clear. There was never any discussion about interest. I mean, we've got Mr. Saltzman saying $100,000 to be repaid with interest. But the question arises, what is that interest? How is it to be determined? You call for it. Basically, you call for an evidentiary hearing. But I think that would have been a waste of time because I believe, if my memory is still with me, that, in fact, nobody talked about interest. They just took it in good faith that it was between men that there would be some interest paid, and they would work that out themselves. Well, okay, that's fine as between gentlemen and people who want to agree and compromise, but that's not the standard we use in the courts of law. That's the issue. Thank you. Well, that brings me to the end of my argument in favor of the appellant. And if there are no more questions, I'll sit down and I'll. Thank you. Thanks very much, Mr. Moss. We'll give you an opportunity to respond at the end. Thank you, sir. Thank you. May it please the Court? Yes. Steve Chaykin on behalf of the appellee, Dr. Leonard Kranzler. The first point I would like to respond to is the fact that on the termination of the interest was raised, there was a motion for summary judgment, and the Court determined liability only and set a trial for the interest rate. We did appear at the trial. We brought forth an accountant. We had an affidavit. The defendant did not refute the accountant's determination of the interest, and the Court determined the interest based on the accountant's proffered testimony. With respect to the applicable statute of limitations here, I think it is clear, based on the foregoing arguments, that it is either the ten-year statute of limitations under Section 206 or the five-year statute of limitations under Section 205. And it is the plaintiff's position that regardless of the resolution of that issue, this complaint was timely filed. And that is so because of two reasons. First, the complaint was filed approximately two months after the plaintiff made demand upon the defendant to repay this loan. And second, because the complaint was filed within four years of the last payment which this defendant admittedly caused his company to repay to the plaintiff for amounts owed under the note. This is taking aside the issue of whether the brother-in-law made a payment or not. The last payment which this defendant admittedly caused to be paid was made on September 26, 2003, within four years of the filing of the complaint. Illinois case law makes clear that a part payment on a debt tolls the statute of limitations under either Section 206 or 205. The case we cited to our brief was St. Francis Medical Center v. Vernon. And in that case, a hospital brought an action against a patient for services they rendered approximately six years ago. And attached to the complaint was an itemized statement of account which showed that the defendant made a payment for the services rendered approximately six years after the services were rendered. And there the court held that the statute of limitations under Section 205 was told by the payment made six years after the services were rendered. That is similar to the case here. Here, there is no dispute. The defendant admits that the plaintiff loaned him the money. The defendant admits that he intended to repay the plaintiff the money. The defendant admits that he caused his company, which he was president, director, and shareholder of, to make numerous payments to the plaintiff on account of this note for the money owed to the plaintiff. The last payment being caused by this defendant was September 26, 2003, again within four years of the filing of the complaint. We also believe that where there is no time stated for repayment, the repayment requires a demand. The one-leg case law makes this clear as well. We cite it to Shriver v. Hackett. In each case, a commodities trader loaned $2,500 to another commodities trader in consideration for an oral promise to repay the loan on demand. Approximately five years, just over five years later, the plaintiff made demand on the defendant. And four months later, the complaint was filed. The parties agreed in that case that the five-year statute of limitations under Section 205 applied, disagreed as to when the limitation periods began to run. The defendant, like the defendant in this case, seems to be arguing that the limitations period ran when the loan was made. The plaintiff in Shriver argued that the limitations period had not begun to run until the plaintiff made demand. The appellate court agreed with the plaintiff and stated, and I'll quote the appellate court in that case, where one promises to render performance on demand or at a specified time after demand, the reasonable interpretation is that an actual demand for performance is an express condition precedent to the duty of performance. Thus, an action does not lie unless demand has been made  In this case, regardless of whether the limitation period runs from the time of demand or from the time the defendant admittedly caused payment to be made, on this note, the cause of action was filed within the five-year limitation period under Section 205. So either under Section 206 or 205, this complaint was timely filed. Unless you have any other questions for me, Your Honors. Yes, let me ask you, Counsel. As far as the motion for summary judgment that was granted by the lower court, the fact that none of the payments, or allegedly none of the payments, were made by the person individually and was made by either corporations or brother-in-law or whatever it was, does that have any impact on whether or not there's a factual question? I don't believe so. I believe the defendant admits in his request for admissions that he caused his company to make these payments on account of the note that he owed to the plaintiff. That is undisputed. That's in the request for admissions. And that is up until September 26, 2003. So the fact that the defendant admits that he caused these payments to be made to the plaintiff on account of this note, I think makes that no longer an issue of fact. If there are no other questions, I appreciate your attention. Thank you, Counsel. Mr. Mollison. Thank you, sir. Justice Hartman once said to me, very few lawyers have won their cases on appellate argument. Many have lost. And with that, I'll thank you for your time and your attention. God bless you, Mr. Mollison. The case will be taken under advisement.